# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| | |
|---|---|
| STATE OF ARKANSAS, *ex rel.* <br> LESLIE RUTLEDGE, ATTORNEY GENERAL | PLAINTIFF |
| v.    No. 4:16CV00912 JLH | |
| CAPITAL CREDIT SOLUTIONS, INC.; <br> and WILLIE J. MCKENZIE | DEFENDANTS |

## OPINION AND ORDER

The State of Arkansas, by and through its Attorney General Leslie Rutledge, brought this action against Capital Credit Solutions, Inc., and Willie J. McKenzie for violations of the Credit Repair Organizations Act, 15 U.S.C. §§1679 through 1679J; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 through 116; and the Arkansas Credit Services Organizations Act, Ark. Code Ann. §§ 4-91-101 through 109. The Attorney General is expressly authorized by statute to enforce the Credit Repair Organizations Act and the Arkansas Deceptive Trade Practices Act. 15 U.S.C. § 1679h(c)(1); Ark. Code Ann. § 4-88-104. After Capital Credit Solutions and McKenzie failed to respond to the complaint, the State filed a motion for entry of default. Document #9. The Clerk of Court entered the defaults pursuant to Federal Rule of Civil Procedure 55(a). Documents #10 and #11. Then, the State filed a motion for default judgment pursuant to Rule 55(b)(2). Document #13. For the following reasons, the motion is granted in part and denied in part.

## I.

The clerk must enter a default when a party against whom relief is sought has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). "[E]ntry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). When a default is entered, the facts alleged in the complaint except those relating to the

amount of damages are deemed admitted and may not be later contested. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); 10A Charles Alan Wright et al., Federal Practice and Procedure at § 2688. However, in deciding a motion for default judgment "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *See Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotations omitted).

The State alleges the following facts. *See* Document #1. Capital Credit Solutions is a Florida for-profit corporation. McKenzie managed and controlled its business practices, including the furnishing of credit repair services to Arkansans. The defendants sell services purported to improve a consumer's credit history, credit score, and credit ratings. To promote the services they provide, the defendants placed signs throughout Arkansas, soliciting business in exchange for compensation. Without permission, the defendants placed signs in various locations, which read: "CREDIT REPAIR SERVICE 866-424-9966 " or "REPAIR BAD CREDIT $250 866-424-9966." Document #1 at 26. The phone number is linked with a website for Capital Credit Solutions, which makes several representations: "Welcome to your road to credit redemption. REPAIR BAD CREDIT $250"; "Grow Your Credit Score: WE REMOVE: OPEN COLLECTION ACCOUNTS . . ."; "All of the negative results will bring your score down! Its [sic] our job to remove some the [sic] items, including inaccurate debt!"; "[T]he fastest and most efficient way to build your credit score is let [sic] us get to work for you!"; and "The longer your [sic] in the program the better the results!" Document #1 at 28-30.

The website includes a page entitled "Contract." Document #1 at 31. There are spaces for a consumer to fill in his name, address, and social security number. *Id*. The contract describes the

services Capital Credit Solutions agrees to provide: "Improve client's FICO/credit scores and credit history" and "[p]rovide consulting services on credit history and will work hard to improve your credit rating and clear and/or correct your credit report of the credit and personal items which you believe an identify to be inaccurate, misleading or unverifiable." *Id*. at 32. The contract provides that a consumer must pay an initial "Work Fee" of $250 to be paid three days after signing the contract. *Id*. at 31. Then, the consumer must pay a monthly fee of $50 "after work is completed." *Id*. Work is completed "after receiving response from Credit Bureau informing the removal or correction of the trade line/item." *Id*. These unchallenged facts constitute legitimate causes of action under the Credit Repair Organizations Act and the Arkansas Deceptive Trade Practices Act.

**A.     Credit Repair Organizations Act**

Congress enacted the Credit Repair Organizations Act to ensure that those considering the services of credit repair organizations are provided the information necessary to make an informed decision and to protect the public from deceptive advertising and business practices by those organizations. 15 U.S.C. § 1679. The Credit Repair Organizations Act applies only to those who are "credit repair organizations." 15 U.S.C. § 1679a(3). The complaint alleges that Capital Credit Solutions is a "credit repair organization:" McKenzie uses the internet—an instrumentality of interstate commerce—to provide for a fee the services of Capital Credit Solutions, purported to improve credit ratings. *See Taylor v. Bettis*, 976 F. Supp. 2d 721, 740-41 (E.D. N.C. 2013). The complaint also sufficiently alleges that the State complied with the Credit Repair Organizations Act notice requirement. Document #1 at 15, ¶40 (citing 15 U.S.C. § 1679h(2)(A)). The State maintains that the defendants have violated and continue to violate the Credit Repair Organizations Act in three ways: (1) misrepresenting to consumers the extent to which negative items can be legitimately

3

disputed with the credit bureaus; (2) requiring consumers to pay in advance and to pay monthly fees; and (3) providing a contract that does not meet Credit Repair Organizations Act specifications.

The Credit Repair Organizations Act prohibits credit repair organizations from making misleading representations about their services. 15 U.S.C. § 1679b(a)(3). The complaint alleges that the defendants represented in advertisements and on the Capital Credit Solutions website that they could "repair" credit by removing inaccurate, misleading, or unverifiable entries and open collection accounts from consumer credit reports, and that the longer a consumer subscribes to the services, the more his credit will improve. Because these representations imply that Capital Credit Solutions has the power to change a consumer's credit report and then to guarantee those changes will continue to improve a consumer's credit, they are misleading and a violation of the Credit Repair Organizations Act. *See Nielsen v. United Creditors Alliance Corp.*, No. 98 C 5910, 1999 WL 674740 at *2 (N.D. Ill. Aug. 23, 1999).

The Credit Repair Organizations Act also prohibits credit repair organizations from charging or receiving money prior to the full performance of the agreed-upon services. 15 U.S.C. § 1679b(b). The State attached to the complaint the contract provided on the website. Document #1 at 31-37. The terms of the contract include: "You agree to pay Capital Credit Solutions Inc. the initial Work Fee within five (1) business days of signing this Agreement and only after the first work is completed. You understand and acknowledge that First Work is non-refundable after five days of signing this Agreement and after the first work is done." *Id.* at 32. The initial work fee is $250. *Id.* at 31. The agreed-upon services include consulting, improving the client's credit rating, and removing inaccurate, misleading, or unverifiable blemishes in the client's credit report. *Id.* The contract explains that Capital Credit Solutions cannot "accurately predict how long the process will

4

take, but the average time for most clients is six (6) months." *Id.* The contract does not define "first work." It is obvious, however, that "first work" does not entail the full performance of the agreed-upon services. Charging money after "first work" and prior to the full performance of the agreed-upon services is a violation of the Credit Repair Organizations Act. *See F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1334 (M.D. Fl. 2010).

In addition, the Credit Repair Organizations Act requires credit repair organizations to provide certain disclosures to consumers in a particular form. 15 U.S.C. § 1679c. Section 1679c(a) sets forth a written statement that credit repair organizations must provide to any consumer prior to the execution of a contract. The complaint alleges and the attached contract reflects that while the defendants included the written statement, they failed to emphasize certain parts of the statement in bold font. Document #1 at 34. Section 1679c(b) requires the written statement to be set forth "separate from any written contract" or "any other written material provided to the consumer." The complaint alleges that the defendants failed to provide the written statement to consumers on a separate document.

Finally, section 1679d provides specifications for credit repair contracts. It requires contracts to include the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization. 15 U.S.C. § 1679d(b)(1). The defendants' contract does not include such terms and conditions. *See* Document #1 at 31. Section 1679d(b)(4) requires a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature, regarding the consumer's right to cancel the contract. The contract includes such a statement, but the State alleges that the statement is obscured by contradictory language in another section. Document #1 at 14, ¶38. This is not an unchallenged factual allegation;

5

rather, it is a legal conclusion that does not support a legitimate cause of action under the Credit Repair Organizations Act.

**B.      Arkansas Credit Services Organizations Act**

The Arkansas General Assembly enacted the Credit Services Organizations Act in 1987. In 2017, the Arkansas General Assembly repealed the Credit Services Organizations Act of 1987 and replaced it with the Credit Repair Services Organizations Act of 2017, which became effective August 1, 2017. 2017 Ark. Acts 944 (codified at Ark. Code Ann. § 4-91-201-02). The violations complained of occurred under the Arkansas Credit Services Organizations Act of 1987, which is similar to the federal Credit Repair Organizations Act in substance. *See* Ark. Code Ann. § 4-91-101-09 (repealed 2017). However, the Arkansas Credit Services Organizations Act does not contain an enforcement provision explicitly authorizing the Attorney General to bring an action on behalf of consumers. Rather, "[a]ny *buyer* suffering damages as a result of a violation of [the Arkansas Credit Services Organizations Act] by any credit services organization may bring an action for recovery of damages." Ark. Code Ann. 4-91-105(a) (repealed 2017) (emphasis added). A "buyer" means any individual who is solicited to purchase or who purchases the services of a credit services organization. Ark. Code Ann. § 4-91-102(1). The Attorney General is not a "buyer" under the Arkansas Credit Services Organizations Act and therefore the State may not seek a remedy for a violation of its provisions.

The State also seeks an injunction, enjoining the defendants from violating the Arkansas Credit Services Organizations Act. Any future violations would occur under the Arkansas Credit Repair Organizations Act of 2017. Unlike the Arkansas Credit Services Organizations Act, the Arkansas Credit Repair Organizations Act provides that a violation of its provisions is subject to

6

enforcement as provided in the Arkansas Deceptive Trade Practices Act. The Arkansas Deceptive Trade Practices Act authorizes the Attorney General to enforce its provisions. Ark. Code Ann. § 4-88-104.

## C. Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act protects consumers from a variety of unfair and deceptive practices. Ark. Code Ann. § 4-88-101, *et. seq.*. It prohibits knowingly making a false representation as to the characteristics, uses, and benefits of services. Ark. Code Ann. § 4-88-107(a)(1). "Services" means work, labor, or other things purchased that do not have physical characteristics. Ark. Code Ann. § 4-88-102(7). As discussed previously, the complaint alleges and the evidence shows that the defendants advertised that they could repair bad credit as credit repair doctors, remove negative credit, and remove open collection accounts. The Arkansas Deceptive Trade Practices Act "catch-all provision" also broadly prohibits engaging in any other unconscionable, false, or deceptive act or practice. Ark. Code Ann. § 4-88-107(10). "The Arkansas Supreme Court has defined an unconscionable act as 'an act that affronts the sense of justice, decency, or reasonableness' including acts that violate public policy or a statute." *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 886 (E.D. Ark. 2008) (quoting *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800, 811 (2006)). The complaint alleges that the defendants charge an initial fee and a monthly fee while holding themselves out as experts in the field of credit repair, though they did not possess any knowledge that the average consumer cannot access.

Taking the State's allegations in the complaint as true, except for those allegations as to the amount of damages, the Court concludes that the State is entitled to default judgment against the

defendants with respect to liability under the Credit Repair Organizations Act and the Arkansas Deceptive Trade Practices Act.

**II.**

The State's motion for a default judgment seeks a permanent injunction, civil penalties, punitive damages, and attorneys' fees and costs. The State's motion for a default judgment does not seek compensatory damages, nor did the complaint allege that any person in Arkansas has incurred damages.

The Arkansas Deceptive Trade Practices Act provides that the Court may "[a]ssess penalties to be paid to the state, not to exceed ten thousand dollars ($10,000) per violation, against persons found to have violated this chapter." Ark. Code Ann. § 4-88-113(a)(3). The State requests the maximum $10,000 for each violation and maintains that the unchallenged facts establish eight separate violations. Document #14 at 12-13 (citing Document #1 at 15-16, ¶¶ 41-45).

The Court has the discretion to assess the amount of the penalty for each violation. *See* Ark. Code Ann. § 4-88-113(a). The evidence as to how many violations occurred is murky at best. Because the defendants defaulted, it can be assumed that at least one violation occurred. A civil penalty of $10,000 will be assessed. Capital Credit Solutions and McKenzie are jointly and severally liable for the penalties because the unchallenged facts establish McKenzie's liability under Ark. Code Ann. § 4-88-113(d)(1).

The State claims that it is entitled to an award of punitive damages under the Arkansas Credit Services Organizations Act, but as explained above, the Arkansas Credit Services Organizations Act does not authorize the State to bring an action for damages.

In addition to the assessment of a civil penalty and the award of punitive damages, the State asks the Court to enter a permanent injunction:

> preventing the defendants from engaging in any deceptive acts or practices in violation of the ADPTA and from violating any provisions of the ASCOA and CROA; canceling any outstanding contracts for credit repair services between the defendants and any Arkansas consumer, together with any obligations to which such consumers may be subject under such contracts; returning to affected consumers all funds received by defendants as a result of defendant's prohibited practices; forfeiting all corporate charters, licenses, permits or any authorizations to do business in Arkansas currently held by defendants and that Defendant Willie McKenzie, who directly or indirectly controlled the actions of the remaining defendants, be held jointly and severally liable for any violations committed by the other defendants.

Document #14 at 11-12. The Arkansas Deceptive Trade Practices Act and the Credit Repair Organizations Act authorize injunctive relief, whether directly or indirectly. Under the Arkansas Deceptive Trade Practices Act, the Court may make such orders or judgments as may be necessary to prevent the use by a violator of any prohibited practices, may order the violator to make restitution, and may order the suspension or forfeiture of licenses or permits to do business in the state. Ark. Code Ann. § 4-88-113. The complaint did not allege, nor did the motion for a default judgment present proof, that either defendant has a license or a permit to do business in the State of Arkansas. Under the Credit Repair Organizations Act, the chief law enforcement officer of a State may bring an action to enjoin a violation of its provisions. 15 U.S.C. § 1679h(c)(1)(A).

The Arkansas Supreme Court has held that "when the Attorney General has a specific statutory mandate to protect the public interest, the traditional common-law prerequisites for an injunction in civil litigation, such as irreparable harm and likelihood of success on the merits, are not applicable." *So. Coll. of Naturopathy v. State ex rel. Beebe*, 360 Ark. 543, 553-54, 203 S.W.3d 111, 117 (2005). Instead, "[i]t is a violation of the Act that triggers the prayer for an injunction." *Id.* (citations omitted). The State has established that advertisements by the defendants violate the

Arkansas Deceptive Trade Practices Act. They have not, however, alleged or presented evidence that any person in the State of Arkansas has contracted with or paid any money to the defendants for any reason. The State has identified no contracts that could be canceled nor any funds paid to the defendants that could be the subject of restitution. In the absence of any allegation or any evidence that any person in the State of Arkansas has contracted with the defendants or any suggestion as to how an injunction could be enforced, it is not clear what would be accomplished by entering an injunction. The Court will not exercise its power to issue an injunction.

Finally, the State requests that the Court award attorneys' fees in the amount of $8,587.50 and costs in the amount of $594.10. Those requests are supported by the affidavit of Assistant Attorney General David A.F. McCoy. Document #14 at 13, 18-22. The Credit Repair Organizations Act and the Arkansas Deceptive Trade Practices Act provide for the recovery of attorneys' fees and costs in a successful enforcement action by the State. 15 U.S.C. 1679h(c)(1)(C); Ark. Code Ann. § 4-88-113(e). McCoy estimates the amount of time spent working on the case, a total of 57.25 hours, and bills the work at a rate of $150 per hour. *Id.* at 21. The fee request is reasonable. The requested costs include a $400 filing fee and the costs for service of process on Capital Credit Solutions and McKenzie. Document #14 at 22. These costs are recoverable. 28 U.S.C. § 1920.

## CONCLUSION

For the foregoing reasons, the motion for default judgment is GRANTED IN PART and DENIED IN PART. The motion is granted as to the State's request for default judgment for violations of the Credit Repair Organizations Act and the Arkansas Deceptive Trade Practices Act. A civil penalty in the amount of $10,000 under the Arkansas Deceptive Trade Practices Act will be awarded. Attorneys' fees in the amount of $8,587.50 and costs in the amount of $594.10 under the

Credit Repair Organizations Act and Arkansas Deceptive Trade Practices Act will be awarded. The motion is denied as to the State's request for a default judgment for violations of the Arkansas Credit Services Organizations Act, punitive damages under the Arkansas Credit Services Organizations Act, restitution under the Arkansas Deceptive Trade Practices Act, and injunctive relief. A judgment will be entered separately.

    IT IS SO ORDERED this 26th day of September, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE